## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GEORGE G. HARRIS, a/k/a,
GEORGE G. HARRIS' WILDLIFE COLLECTION,

       *Plaintiff,*

   v.

CONNECTICUT SHOTGUN MANUFACTURING
COMPANY,

       *Defendant.*

_____

Civil Action No.  3:16cv548 (SRU)

April 8, 2016

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

**SPEARS MANNING LLC**
2425 Post Road, Suite 203
Southport, Connecticut 06890
Telephone:  (315) 425-2724

**BRIAN SPEARS**
*of Counsel*

**BARCLAY DAMON, LLP**
One Park Place
300 South State Street
Syracuse, New York 13202
Telephone:  (315) 425-2724

**MICHAEL A. OROPALLO** (*pro hac vice* application to be filed)
**JASON C. HALPIN** (*pro hac vice* application to be filed)
*of Counsel*

*Co-Counsel for Plaintiffs*
George G. Harris, a/k/a George G. Harris' Wildlife Collection

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF THE FACTS ........................................................................................... 1

LEGAL STANDARD .......................................................................................................... 4

ARGUMENT ....................................................................................................................... 5

    A.    Plaintiff Is Likely to Succeed on His Claims ..................................................... 6

        1.    Plaintiff's Copyright Infringement Claim ................................................ 6

            a.    Plaintiff Is the Owner of Valid Copyrights .................................. 7

            b.    Defendant Has Unlawfully Copied Plaintiff's Copyrighted Designs ............................................................................ 8

        2.    Plaintiff's Lanham Act Claim ................................................................ 11

        3.    Plaintiff's DMCA Claim ....................................................................... 13

    B.    Plaintiff Has Suffered Irreparable Harm ........................................................ 14

    C.    The Equities Tip in Favor of Granting the Preliminary Injunction ................... 17

    D.    The Public Interest Will Not Be Disserved by Issuance of the Injunction .................................................................................................... 18

CONCLUSION ................................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Apple Inc. v. Psystar Corp.*, 658 F.3d 1150 (9th Cir. 2011) ........................................................5

*Barefoot Contessa Pantry, LLC v. Aqua Star (USA) Co.*, 15-CV-1092, 2015 U.S. Dist. LEXIS 24013 (S.D.N.Y. Feb. 26, 2015).........................................................................................5, 14

*Boisson v. Banian, Ltd.*, 273 F.3d 262 (2d Cir. 2001) ..............................................................7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................................................16

*CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127 (E.D.N.Y. 2011) .......................18

*Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992).......................................8

*Cosmos Jewelry Ltd., v. Po Sun Hon Co.*, 470 F. Supp. 2d 1072 (C.D. Cal. 2006) ..................13

*Country Fare LLC v. Lucerne Farms*, 11-cv-0722, 2011 U.S. Dist. LEXIS 61064 (D. Conn. June 7, 2011) ................................................................................................................18

*Dish Network L.L.C. v. Aime*, 15-CV-00582, 2016 U.S. Dist. LEXIS 28156 (E.D.N.Y. Mar. 3, 2016)..................................................................................................................................5

*DISH Network L.L.C. v. DelVecchio*, 831 F. Supp. 2d 595 (W.D.N.Y. Oct. 7, 2011) ...............18

*eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)........................................................4

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 193 F.2d 162 (1st Cir. 1951), *aff'd.*, 344 U.S. 228 (1952)...............................................................................................................8

*Fabrex Corp. v. Scarves by Vera*, Inc., 61-cv-0598, 1961 U.S. Dist. LEXIS 3961 (S.D.N.Y. Apr. 14, 1961)..........................................................................................................8

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) .................................................6

*FireSabre Consulting LLC v. Sheehy*, No. 11-CV-4719, 2013 U.S. Dist. LEXIS 139550 (S.D.N.Y. Sept. 13, 2013)..............................................................................................................7

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993 (2d Cir. 1997) .......................12

*Gund, Inc. v. Russ Berrie & Co.*, 701 F. Supp. 1013 (S.D.N.Y. 1988) ......................................10

*Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 28 F. Supp. 3d 193 (S.D.N.Y. 2014) ..............12

*Hamil America, Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999) ............................................................8

*Hart v. Dan Chase Taxidermy Supply Co., Inc.*, 86 F.3d 320 (2d Cir. 1996)..............................7

*Kamar Int'l, Inc. v. Russ Berrie and Co.*, 657 F.2d 1059 (9th Cir. 1981) .................................... 7

*Kohler Co. v. Moen Inc*., 12 F.3d 632 (7th Cir. 1993) ................................................................. 12

*LaChapelle v. Fenty*, 812 F. Supp. 2d 434 (S.D.N.Y. 2011) ........................................................ 10

*Lego A/S v. Best-Lock Constr. Toys, Inc.*, 874 F. Supp. 2d 75 (D. Conn. 2012) ...................... 5, 18

*Manufacturers Techs., Inc. v. CAMS, Inc.,* 706 F. Supp. 984 (D. Conn. 1989) .......................... 9

*Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322 (S.D.N.Y. 2011) ................................................ 15

*Masquerade Novelty v. Unique Indus*., 89-cv-6926, 1990 U.S. Dist. LEXIS 16980
(E.D. Pa. Dec. 13, 1990) ............................................................................................................... 8

*Medisim Ltd. v. BestMed LLC*, 910 F. Supp. 2d 591 (S.D.N.Y. 2012) ....................................... 12

*Merit Diamond Corp. v. Frederick Goldman, Inc.*, 376 F. Supp. 2d 517 (S.D.N.Y.
2005) ........................................................................................................................................... 6, 7

*Mint, Inc. v. Iddi Amad*, 10-cv-9395, 2011 U.S. Dist. LEXIS 49813 (S.D.N.Y. May 9,
2011) ............................................................................................................................................ 17

*Nature's Enters., Inc. v. Pearson*, 08 Civ. 8549, 2008 U.S. Dist. LEXIS 86142
(S.D.N.Y. Oct. 24, 2008) ............................................................................................................. 15

*Novelty Textile Mills v. Joan Fabrics Corp.*, 558 F.2d 1090 (2d Cir. 1977) ............................... 9

*Pivot Point Int'l, Inc. v. Charlene Prods.*, 372 F.3d 913 (7th Cir. 2004) (*en banc*) .................... 7

*Quaker Oats Co. v. Mel Appel Enters.*, 703 F. Supp. 1054 (S.D.N.Y. 1989) .............................. 9

*R. Dakin & Co. v. A & L Novelty Co.*, 444 F. Supp. 1080 (E.D.N.Y. 1978) .............................. 10

*Rogers v. Koons*, 960 F.2d 301 (2d Cir. 1992) ........................................................................... 10

*Royalty Designs, Inc. v. Thrifticheck Serv. Corp.*, 204 F. Supp. 702 (S.D.N.Y. 1962) .............. 8

*Salinger v. Colting*, 607 F.3d 68, 70 (2d Cir. 2010) .......................................................... 5, 14, 15

*Stormy Clime Ltd. v. ProGroup, Inc.*, 809 F.2d 971 (2d Cir. 1987) .......................................... 12

*Superior Form Builders v. Dan Chase*, 74 F.3d 488 (4th Cir. 1996), *cert. denied*,
519 U.S. 809 (1996)....................................................................................................................... 7

*Tom Doherty Assocs. v. Saban Entm't, Inc*., 60 F.3d 27 (2d Cir. 1995) ..................................... 15

*Universal City Studios, Inc. v. Reimerdes*, 82 F. Supp. 2d 211 (S.D.N.Y. 2000) ...................... 14

*Ward v. Andrews McMeel Publ'g, LLC*, 963 F. Supp. 2d 222 (S.D.N.Y. 2013)........................ 12

*Webb v. Stallone*, 910 F. Supp. 2d 681 (S.D.N.Y. 2012)............................................................. 9

*Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502 (7th Cir. 1994) ...................... 10

*Williams v. Crichton*, 84 F.3d 581 (2d Cir. 1996) ...................................................................... 9

*Yurman Design, Inc. v. PAJ Inc.*, 262 F.3d 101 (2d Cir. 2001).................................................... 8

## Statutes

15 U.S.C. § 1116 .......................................................................................................................... 4

15 U.S.C. §§ 1501 *et seq*.................................................................................................. 4, 6, 11, 12

17 U.S.C. § 106 ......................................................................................................................... 2, 6

17 U.S.C. § 1202(c)(1) ................................................................................................................ 13

17 U.S.C. § 1203 .......................................................................................................................... 4

17 U.S.C. § 401(b) ...................................................................................................................... 11

17 U.S.C. § 410(c) ........................................................................................................................ 7

17 U.S.C. § 502 ............................................................................................................................ 4

17 U.S.C. §§ 101 *et seq.*............................................................................................................ 2, 4, 6

17 U.S.C. §§ 1201 *et. seq*....................................................................................................... 4, 6, 13, 14

17 U.S.C. §§ 1202(b)(1), (3)....................................................................................................... 13

17 U.S.C. §§ 501 *et seq.*............................................................................................................... 6

## Rules

Fed. R. Civ. P. 65 ...................................................................................................................... 1, 4

## PRELIMINARY STATEMENT

Plaintiff George G. Harris, a/k/a George G. Harris' Wildlife Collection, ("Plaintiff" or "Harris") submits this memorandum of law in support of his motion for a preliminary injunction preliminarily enjoining Defendant Connecticut Shotgun Manufacturing Company ("CSMC" or "Defendant"), and its agents, servants, employees, and those acting in concert with it, from infringing Plaintiff's rights in and to his copyrighted works pursuant to Fed. R. Civ. P. 65.

This case involves the blatant and willful copying of copyrighted and registered sculptural works by a former long-time buyer of the copyright owner's original works.  For fifteen years, Plaintiff sold his works to CSMC, which resold such works for a profit.  On or about June 4, 2012, like many times before, Plaintiff provided CSMC with samples of many new copyrighted works.  Shortly thereafter, CSMC placed their last order with Plaintiff.  That is because, unbeknownst to Plaintiff (until recently), CSMC had decided to copy Plaintiff's copyrighted artwork and start selling their own infringing copies instead.

After recently ordering and receiving dozens of the suspected CSMC copies, Plaintiff confirmed CSMC had indeed copied his copyrighted works.  This action is to enforce Plaintiff's registered copyrights in his original expressions, and to stop CSMC from further unlawful conduct.

## STATEMENT OF THE FACTS

Plaintiff is an artist and original sculptor of collector-grade artwork specializing in wildlife themed designs.  (*See* Affidavit of George G. Harris, sworn the 7th day of April, 2016, with exhibits ("Harris Aff."), ¶¶ 3-4.)  Plaintiff has authored and owns all copyrights in these works, which depict, among other things, various animals and wildlife and number over 550 to date (the "Works").  (Harris Aff., ¶¶ 3, 5.)  Plaintiff's Works are developed through the meticulous sculpting, molding, and casting in various media, including pewter, which express his individualized animal motifs and wildlife images whereby a mold is created from those originals

and production pins, pendants, tie tacks, and other decorative items are cast, which replicate the originals in every detail and are sold as wearable art.  (*Id.*, ¶ 4.)

Since 1984, Plaintiff has created his hand designed collector-grade artwork and the precision molds from which the production castings are made.  (*Id.*, ¶ 4.)  Plaintiff's original expressions and copyrighted sculptures are sold worldwide through the internet and the outdoor trade, specialty shops, galleries, and catalogs, and often are used for fundraising and promotions by conservation groups, schools, and businesses.  (*Id.*, ¶ 5.)

The Works are registered with the United States Copyright Office, and Plaintiff has been issued Certificates of Registration for each of them.  (*Id.*, ¶ 6, Ex. B.)  Plaintiff has taken appropriate measures to place the public on notice of these copyrights by placing statutory copyright notices on each of his Works.  (*Id.,* ¶ 7.)  Plaintiff is entitled to all of the exclusive rights that inure to the benefit of a copyright holder pursuant to the United States Copyright Act with respect to his Works, including the rights bestowed by Section 106 of the Act.

CSMC advertises, markets, and sells various types of guns and related merchandise, as well as competing sporting pins, pendants, and tie tacks in a variety of designs and materials. (Harris Aff., ¶¶ 9-10.)  CSMC sells its products through its stores, website, catalogs, and other avenues and advertises in some of the same markets as Plaintiff.  (*Id.*, ¶¶ 29-30.)  Beginning in 1997, and continuing thereafter until 2012, CSMC purchased pins, pendants, and other items from Plaintiff for resale through its sales catalog and the company's website.  (*Id.*, ¶¶ 11-14.)  All of Plaintiff's items sold to Defendant contained a copyright notice.  (*Id.*, ¶ 15.)  Defendant was at all times aware that Plaintiff's Works were copyrighted.  (*Id.*)  In or around December 2015, Plaintiff first suspected that CSMC was offering for sale products that appeared to be copies of designs created and copyrighted by Plaintiff. (*Id.*, ¶ 19.)

Once Plaintiff became aware of the possible infringement, Plaintiff arranged for the purchase of the suspect products. (*Id.*, ¶ 20.) Thereafter, Plaintiff obtained more than forty of these suspect products. (*Id.*, ¶ 21.) In order to verify the infringement, Plaintiff performed a side-by-side comparison of each product with Plaintiff's similar design. (*Id.*, ¶ 27.) The side-by-side comparisons, which are attached to the Harris Affidavit as Exhibit D, make clear the substantial similarity between thirty-four designs created and copyrighted by Plaintiff (the "Infringed Works") and thirty-four designs used by CSMC to make sixty different pins, pendants, and tie tacks in various materials (the "CSMC Infringing Products").[1] This conclusion is unmistakable, even to a lay person. Indeed, aside from superficial changes, such as the material used or the level of texture, the CSMC Infringing Products are near replicas of the Infringed Works. (*Id.*, ¶¶ 31-32.) By way of just one example, the following photograph shows the front and back of a Harris Infringed Work (left) and the virtually identical CSMC Infringing Product (right).



**Harris #301A Walking Pheasant Pin (left)   CSMC #Z0400  (right)**
**Note:  © 2012 on back**

This photograph highlights the blatant copying by CSMC of Plaintiff's Infringed Works, even going so far as to add a copyright symbol, ©, and the year "2012" on the back of the CSMC

---

[1] For example, Defendant CSMC sells three different versions of a "Walking Pheasant" pin, one in pewter, another gold plated, and a third hand painted, each based on the same design, which Plaintiff has copyrighted. (*See* Harris Aff., ¶ 22; Ex. D.)

Infringing Product.  (*Id.*, ¶ 35.)  This is significant because Plaintiff has performed multiple searches for copyrights registered by CSMC, and has been unable to locate any registrations for any of the CSMC Infringing Products containing a 2012 copyright notice.  (*Id.*, ¶ 36.)

In short, all of the CSMC Infringing Products have been created, not by hand-designing original sculptures, as Plaintiff does, but by knocking off Plaintiff's Infringed Works, without permission from Plaintiff to do so, and without compensating Plaintiff for infringing upon his exclusive rights.  (*Id.*, ¶ 31.)

For the reasons hereinafter set forth, Plaintiff respectfully requests that Defendant be enjoined from its unlawful activities.

## LEGAL STANDARD

The Copyright Act, the Lanham Act, and the Digital Millennium Copyright Act ("DMCA") all provide for the issuance of injunctions.  *See* 17 U.S.C. § 502 ("any court having jurisdiction . . . may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright"); 15 U.S.C. § 1116 ("[the district court] shall have power to grant injunctions"); 17 U.S.C. § 1203 ("[i]n an action brought under [the Digital Millennium Copyright Act] the court . . . may grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation, but in no event shall impose a prior restraint on free speech or the press protected under the 1st amendment to the Constitution").  Furthermore, Fed. R. Civ. P. 65 provides specific authority to district courts to grant preliminary injunctions.

Federal Circuits, including the Second Circuit, apply a four factor test, derived from *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), to determine whether a request for a preliminary injunction should be granted.  *See Salinger v. Colting*, 607 F.3d 68, 70, 79-80 (2d Cir. 2010).  The four factors include:  (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff will suffer irreparable injury absent a preliminary injunction; (3) the nature and extent

of the hardships suffered by the plaintiff and the defendant; and (4) the public interest. *See id.*;
*Lego A/S v. Best-Lock Constr. Toys, Inc.*, 874 F. Supp. 2d 75, 80 (D. Conn. 2012) ("The Second
Circuit has recently held that the test for the grant of preliminary injunctions based on alleged
copyright infringement is the four-factor test set forth by the Supreme Court in *eBay Inc. v.
MercExchange, L.L.C.*, . . . while intimating that the *eBay* formulation applies to all applications
for preliminary injunctions."); *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1152-1153 (9th Cir.
2011) (holding as proper the district court's application of *eBay* factors to request for preliminary
injunction brought under the Digital Millennium Copyright Act); *Dish Network L.L.C. v. Aime*,
15-CV-00582, 2016 U.S. Dist. LEXIS 28156, *1, *10 (E.D.N.Y. Mar. 3, 2016) (same); *Barefoot
Contessa Pantry, LLC v. Aqua Star (USA) Co.*, 15-CV-1092, 2015 U.S. Dist. LEXIS 24013, *6-*7
(S.D.N.Y. Feb. 26, 2015) (noting that "[t]he Second Circuit has not definitively ruled on whether
a Court should consider the additional factors set forth in *eBay* . . . in evaluating preliminary
injunctions in the trademark infringement context[,]" but acknowledging that certain district courts
have applied the *eBay* factors and considering all four factors in evaluating the plaintiffs' request
for a temporary restraining order).

## ARGUMENT

It is appropriate to grant a preliminary injunction in this case. The uncontroverted facts
establish that Plaintiff has a likelihood of success on the merits of his claims. Plaintiff has suffered,
and will continue to suffer, irreparable harm as a result of Defendant's unlawful acts. Moreover,
the irreparable harm that Plaintiff will suffer if an injunction does not issue would be greater than
any potential harm suffered by Defendant if the injunction is granted. Enjoining Defendant from
selling copies of Plaintiff's works – something Defendant has no right to do in the first place – will
not cause Defendant to suffer any unexpected business harm. Indeed, it is clear based on a review
of Defendant's advertising and marketing materials that Defendant's sales of the CSMC Infringing

Products is not even its primary business.  Conversely, as each day goes by during which Defendant continues to violate Plaintiff's rights, Plaintiff wrongfully suffers lost profits and damages to his reputation and goodwill in amounts that are impossible to quantify.  Finally, the public interest in preventing copyright infringement and violations of Plaintiff's rights under the Lanham Act and DMCA weighs heavily in favor of granting Plaintiff a preliminary injunction.

    **A.**    **Plaintiff Is Likely to Succeed on His Claims.**

        **1.**    ***Plaintiff's Copyright Infringement Claim***

The Copyright Act of 1976 (the "Act"), 17 U.S.C. §§ 101 *et seq.*, guarantees to copyright owners certain exclusive rights in connection with their copyrighted works including, *inter alia*, the right to reproduce, display, and offer, through sale or otherwise, copies of copyrighted work. 17 U.S.C. § 106.  The Act further provides that one who violates the exclusive rights afforded to copyright owners is an infringer, and can be sued under the Act for the various forms of relief available to copyright owners, including an injunction, an order providing for impounding and disposition of infringing articles, and actual damages.  *See* 17 U.S.C. §§ 501 *et seq.*

The essential elements of a copyright infringement claim are straightforward; a plaintiff must establish "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original [by the defendant]." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Merit Diamond Corp. v. Frederick Goldman, Inc.*, 376 F. Supp. 2d 517, 522 (S.D.N.Y. 2005) ("To succeed on the merits of its copyright infringement claim, [the plaintiff] must establish:  (1) ownership in a valid copyright; and (2) that Defendant[] ha[s] engaged in unauthorized copying of the protected work.") (citing *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985)).

a.      *Plaintiff Is the Owner of Valid Copyrights*

It is well established under the Act that presenting copyright registration certificates to the Court creates a rebuttable presumption of ownership to valid copyrights.  *See* 17 U.S.C. § 410(c); *Boisson v. Banian, Ltd.*, 273 F.3d 262, 267 (2d Cir. 2001); *see also FireSabre Consulting LLC v. Sheehy*, No. 11-CV-4719, 2013 U.S. Dist. LEXIS 139550, *14 (S.D.N.Y. Sept. 13, 2013) ("A certificate of copyright registration creates a rebuttable presumption of ownership of a valid copyright."); *Merit Diamond Corp.*, 376 F. Supp. 2d at 522 (citing *Hasbro Bradley, Inc*., 780 F.2d 192) ("The issuance of a certificate of registration for a copyright is prima facie evidence of the validity of the copyright.").

Here, Plaintiff possesses a copyright registration in each of the thirty-four designs that Plaintiff claims have been infringed and is thus entitled to the presumption that his copyrights are valid.[2]  (*See* Harris Aff., ¶ 6, Ex. B.)

Moreover, all Circuits addressing the issue have uniformly held that copyright protection extends to realistic depictions of animals.  *See Hart v. Dan Chase Taxidermy Supply Co., Inc.*, 86 F.3d 320, 321-323 (2d Cir. 1996) (holding realistic depictions of animals are copyrightable); *Superior Form Builders v. Dan Chase*, 74 F.3d 488, 494 (4th Cir. 1996), *cert. denied*, 519 U.S. 809 (1996) (holding realistic depictions of animals copyrightable); *Kamar Int'l, Inc. v. Russ Berrie and Co.*, 657 F.2d 1059, 1061 (9th Cir. 1981) (realistic depictions of animals are copyrightable); *cf. Pivot Point Int'l, Inc. v. Charlene Prods.*, 372 F.3d 913, 931-932 (7th Cir. 2004) (*en banc*) (holding realistic depictions of a human head copyrightable).

---

[2] Plaintiff's copyrights cover 3-dimensional sculptures and jewelry designs, thus prohibiting anyone from creating a substantially similar 3-dimensional sculpture or jewelry design, regardless of the material used to create such a substantially similar sculpture or jewelry design.

Indeed, in a case very similar to the subject matter of this case, the First Circuit was asked to decide whether or not the trial court erred in finding ceramic statues of dogs in a "show" pose sufficiently original to be copyrightable. *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 193 F.2d 162 (1st Cir. 1951), *aff'd.*, 344 U.S. 228 (1952). The court found that the district court did not err, and that such statues were indeed copyrightable. *Id*. at 164-165; *see also Royalty Designs, Inc. v. Thrifticheck Serv. Corp.*, 204 F. Supp. 702 (S.D.N.Y. 1962) (holding toy banks in the shape of dogs copyrightable); *Masquerade Novelty v. Unique Indus.*, 89-cv-6926, 1990 U.S. Dist. LEXIS 16980, *14-*17 (E.D. Pa. Dec. 13, 1990) (holding sculptures of nose masks copyrightable); *Fabrex Corp. v. Scarves by Vera*, Inc., 61-cv-0598, 1961 U.S. Dist. LEXIS 3961, *2-*3, *10 (S.D.N.Y. Apr. 14, 1961) (relatively simple vegetable designs are protectable).

Thus, there can be no dispute that Plaintiff is the owner of valid copyrights.

b.   *Defendant Has Unlawfully Copied Plaintiff's Copyrighted Designs*

To establish infringement, "the copyright owner must demonstrate that '(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's.'" *Yurman Design, Inc. v. PAJ Inc*., 262 F.3d 101, 110 (2d Cir. 2001) (quoting *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999)).

Copying may be proven by showing that "(1) the defendant had access to the plaintiff's copyrighted work and (2) that defendant's work is substantially similar to the plaintiff's copyrightable material." *Computer Assoc. Int'l, Inc. v. Altai, Inc*., 982 F.2d 693, 701 (2d Cir. 1992); *Hamil Am., Inc.*, 193 F.3d at 99 ("Actual copying may be shown by direct or indirect evidence; indirect evidence of copying includes proof that the defendants had access to the copyrighted work and similarities that are probative of copying between the works.");

- 8 -

*Manufacturers Techs., Inc. v. CAMS, Inc.*, 706 F. Supp. 984, 990 (D. Conn. 1989) ("To prove copying by the defendants, the plaintiff must prove that they had 'access' to the copyrighted work and that the defendants' work is 'substantially similar' to the plaintiff's work."); *Webb v. Stallone*, 910 F. Supp. 2d 681, 684 (S.D.N.Y. 2012) ("The level of similarity needed to establish copying is now commonly referred to as probative similarity.").

In determining whether two works are substantially similar, courts in this Circuit apply the "ordinary observer test," asking "whether a lay observer would consider the works as a whole substantially similar to one another." *Williams v. Crichton*, 84 F.3d 581, 590 (2d Cir. 1996); *Novelty Textile Mills v. Joan Fabrics Corp.*, 558 F.2d 1090, 1093 (2d Cir. 1977); *Manufacturers Techs., Inc.*, 706 F. Supp. at 1000.

> Speaking to substantial similarity, the Southern District of New York observed:
>
> > Substantial similarity—the second part of the copying prong—is determined by applying the 'average lay observer test.' As described by Judge McMahon,
> >
> > The test for infringement in a case such as this is whether an average lay observer would find a substantial similarity between the copyrighted work and the alleged copy. In applying this test, we do not examine the [works] detail by detail, counting those details, which upon close inspection, appear similar. Rather, we look to the overall appearance of the [works] to see if the combination of these details creates a general impression of substantial similarity. *Fisher Price Toys, Div. of Quaker Oats Co. v. My-Toys Co., Inc.*, 385 F. Supp. 218, 220 (S.D.N.Y. 1974).

*Quaker Oats Co. v. Mel Appel Enters.*, 703 F. Supp. 1054, 1059 (S.D.N.Y. 1989); *see Novelty Textile Mills*, 558 F.2d at 1093 ("'[W]hether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'") (quoting *Ideal Toy Corp. v. Fab-Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir. 1966)).

The copying does *not* need to be of every detail so long as the copy is substantially similar to the original copyrighted work. *See Novelty Textile Mills*, 558 F.2d at 1093. Furthermore, when

examining two works for substantial similarity, the "focus must be on the similarity of the *expression* of an idea or fact, not on the similarity of the facts, ideas or concepts themselves." *Rogers v. Koons*, 960 F.2d 301, 308 (2d Cir. 1992); *see also LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 441 (S.D.N.Y. 2011); *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502 (7th Cir. 1994). Indeed, products may be of a different size and made of a different material and still be found to be substantially similar. *See, e.g.*, *Gund, Inc. v. Russ Berrie & Co.*, 701 F. Supp. 1013, 1019-1022 (S.D.N.Y. 1988); *R. Dakin & Co. v. A & L Novelty Co.*, 444 F. Supp. 1080, 1082 (E.D.N.Y. 1978) (holding that two stuffed toys with the same general color schemes, but different in the particular colors used, as well as differing in size, and made of partially different materials, were substantially similar).

Here, there is no question that Defendant had access to the Infringed Works. Indeed, Defendant purchased the Infringed Works from Harris over a fifteen-year period. (*See* Harris Aff., ¶ 12.) Moreover, a side-by-side comparison of Plaintiff's Infringed Works with the CSMC Infringing Products shows the designs to be more than just substantially similar – they are virtually identical. (*Id.*, ¶ 27, Ex. D.)

Yet, all of the CSMC Infringing Products are missing Harris' copyright notices. Instead, the backs of the CSMC Infringing Products contain either a different copyright notice, a title of the product, or no marking at all. In other words, while it appears quite clearly that CSMC has copied Harris' design, it has altogether ignored Harris' copyright notice, in most instances even obliterating the notice by either marking over it with a "new" copyright notice, leaving a hollow void in its place (where the copyright notice on the Harris products would normally be visible), or adding material to the backs of the CSMC Infringing Products to cover up the Harris copyright notice. (Harris Aff., ¶ 32.)

In addition, with respect to the CSMC Infringing Products containing a different copyright notice, the backs of these products are marked with the copyright designation, ©, and the year 2012, but with no company identification.  (*See id.*, ¶ 35; Ex. D.)  As an initial matter, 17 U.S.C. § 401(b) requires that "the name of the owner of copyright in the work, or an abbreviation by which the name can be recognized, or a generally known alternative designation of the owner" be provided as part of the requisite form of notice of the copyright.  Thus, if these CSMC Infringing Products were actually registered, the notice of the registration is deficient.

However, Plaintiff has been unable to locate any copyrights registered by Defendant in 2012, or any registrations for any of the CSMC Infringing Products, despite running multiple searches through the United States Copyright Office.  (Harris Aff., ¶ 36.)  Moreover, 2012 happens to be the last year that Defendant purchased products from Harris. The CSMC Infringing Products currently being offered for sale by CSMC that bear the copyright notice, "© 2012," are substantially similar to the Harris copyrighted products that CSMC purchased in that year, with the sole exception of the replacement copyright notice.

Thus, aside from the substantial similarity between the CSMC Infringing Products and Plaintiff's Infringed Works as can be seen from a visual comparison of the products, there also exists at this early stage of the proceedings record evidence that is highly suggestive of copying.

For these reasons, Plaintiff is likely to succeed on his claim of copyright infringement.

### 2.     *Plaintiff's Lanham Act Claim*

In addition to Plaintiff's strong likelihood of success on his copyrights claims, Plaintiff is also likely to succeed on his Lanham Act claim, which creates yet another basis for injunctive relief.

To succeed on a trade dress infringement or unfair competition claim under Section 43(a) of the Lanham Act, a plaintiff must demonstrate (1) "that its trade dress is *either* inherently

distinctive *or* that it has acquired distinctiveness through a secondary meaning"; (2) "that there is a likelihood of confusion between defendant's trade dress and plaintiff's"; and (3) that the trade dress is non-functional. *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 999 (2d Cir. 1997); *see also Medisim Ltd. v. BestMed LLC*, 910 F. Supp. 2d 591, 605 (S.D.N.Y. 2012); *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 28 F. Supp. 3d 193, 214 (S.D.N.Y. 2014) ("The standard for unfair competition claims is the same as for trademark infringement and false designation under the Lanham Act."). "[C]ourts have consistently held that a product's different qualities can be protected simultaneously, or successively, by more than one of the statutory means for protection of intellectual property." *Kohler Co. v. Moen Inc*., 12 F.3d 632, 638 (7th Cir. 1993); *Ward v. Andrews McMeel Publ'g, LLC*, 963 F. Supp. 2d 222, 236 (S.D.N.Y. 2013) (noting that "courts have continued to find that trade dress infringement claims are not duplicative of copyright claims and allow plaintiffs to assert both causes of action simultaneously") (collecting cases).

Here, there is no question that Plaintiff's Works, including the Infringed Works, have achieved great popularity over the years amongst wildlife and animal enthusiasts, collectors, and others throughout the United States, a large component of whom are concerned with the aesthetic appearance and quality of the items purchased. (Harris Aff., ¶ 5.) Plaintiff's unique designs, including the arrangement, shaping and texture incorporated in each of the Works, constitute non-functional and protectable trade dress pursuant to the Lanham Act. *Stormy Clime Ltd. v. ProGroup, Inc*., 809 F.2d 971, 974 (2d Cir. 1987) ("The trade dress of a product involves the total image of a product and may include features such as size, shape, color or color combinations, texture or graphics.") (internal quotation marks and citation omitted); *Fun-Damental Too, Ltd.*, 111 F.3d at 1001 ("The Supreme Court has emphasized that an inherently distinctive trade dress is one whose 'intrinsic nature serves to identify a particular source of a product.'") (quoting *Two*

- 12 -

*Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)); *Cosmos Jewelry Ltd.*, *v. Po Sun Hon Co.*, 470 F. Supp. 2d 1072, 1086-1087 (C.D. Cal. 2006) (holding that the plaintiff demonstrated likelihood of confusion based on the plaintiff's "years of use and heavy promotion," "the parties' goods are highly related and sold in the same market," "the goods are proximate in price range," and other factors).  Moreover, because Defendant advertises its business in the same markets as Plaintiff, and such products have essentially an identical look and feel to Plaintiff's Infringed Works, there is a strong likelihood of confusion between the products.  (Harris Aff., ¶¶ 29-30.)

For these reasons, Plaintiff is likely to succeed on his Lanham Act claim.

3.     ***Plaintiff's DMCA Claim***

Based on the virtually identical nature of certain of the CSMC Infringing Products and the Infringed Works, Plaintiff is also likely to succeed on its claim under the DMCA, which creates yet a third basis for injunctive relief.

Sections 1202(b)(1) and (3) of the DMCA, prohibit the following when the actor knows or has "reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement" of a copyright owner's rights:   (1) the intentional removal or alteration of any copyright management information ("CMI") without authority of the copyright owner or the law; (2) the distribution or importation for distribution of CMI when it is known that the CMI has been removed or altered without authority of the copyright owner or the law; and (3) the distribution, importation for distribution, or public performance of works, copies of works, or phonorecords, knowing that CMI has been removed or altered without authority of the copyright owner or the law.  CMI includes, *inter alia*, "[t]he title and other information identifying the work, including the information set forth on a notice of copyright."  17 U.S.C. § 1202(c)(1).

- 13 -

As stated, the evidence currently available to Plaintiff, including the CSMC Infringing Products themselves, is highly suggestive of not only copying by Defendant, but in at least some instances copying through creating a direct mold from Plaintiff's designs, removing only Plaintiff's CMI from the copied product.  Indeed, this is the only method by which Plaintiff, who has more than thirty (30) years of experience designing and manufacturing sculptures such as the Infringed Works, is aware that certain of the CSMC Infringing Products could be as similar as they are to the Infringed Works – even exhibiting areas where the tool marks from Plaintiff's designs are faithfully reproduced.  (Harris Aff., ¶ 33.)

Since Plaintiff is likely to prove that at least certain of the CSMC Infringing Products were created from molds of Plaintiff's designs, and all of Plaintiff's designs contain CMI, Plaintiff is likely to succeed on his claim that CSMC intentionally removed Plaintiff's CMI from certain of Plaintiff's designs or distributed products that intentionally removed Plaintiff's CMI.  Plaintiff also never gave CSMC permission to remove CMI from any of its designs.

For these reasons, Plaintiff is likely to succeed on his DMCA claim as well.

**B.     Plaintiff Has Suffered Irreparable Harm.**

In the context of copyright infringement cases, "[h]arm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer."  *Salinger*, 607 F.3d at 81; *Universal City Studios, Inc. v. Reimerdes*, 82 F. Supp. 2d 211, 215 (S.D.N.Y. 2000) (applying same irreparable harm considerations in context of DMCA claim); *Barefoot Contessa Pantry, LLC*, 2015 U.S. Dist. LEXIS 24013, at *19-*22 (declining to decide whether irreparable harm may be presumed in light of *Salinger*, but finding such harm to exist based on threat to trade dress by strongly similar product).

"[T]he harm to the plaintiff's property interest has often been characterized as irreparable in light of possible market confusion." *Salinger*, 607 F.3d at 81 (citation omitted); *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 37-38 (2d Cir. 1995) (holding injunctive relief appropriate "to avoid the unfairness of denying an injunction to a plaintiff on the ground that money damages are available, only to confront the plaintiff at a trial on the merits with the rule that [the quantification of] damages must be based on more than speculation"); *Nature's Enters., Inc. v. Pearson*, 08 Civ. 8549, 2008 U.S. Dist. LEXIS 86142, *8-*9 (S.D.N.Y. Oct. 24, 2008). "And courts have tended to issue injunctions in this context because 'to prove the loss of sales due to infringement is . . . notoriously difficult.'" *Id.* (citing *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971)). In addition, "'[t]he loss of First Amendment freedoms,' and hence infringement of the right not to speak, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Id.* (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Although irreparable harm may no longer be presumed upon the establishment of a likelihood of success on the merits, "[t]his is not to say that most copyright plaintiffs who have shown a likelihood of success on the merits would not be irreparably harmed absent preliminary injunctive relief." *Salinger*, 607 F.3d at 82. Indeed, the opposite is true. The "historical tendency" is "to issue preliminary injunctions readily in copyright cases" upon a showing of a likelihood of success on the merits. *Id.*; *Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 334 (S.D.N.Y. 2011) (discussing *Salinger*, and noting that, even absent a presumption of irreparable injury, "a particularly strong likelihood of confusion should weigh in favor of finding irreparable injury").

Here, in light of Defendant's undeniable access to Plaintiff's copyrighted designs, the undisputable protection to which Plaintiff's copyrights are entitled, and the virtually identical

nature of the Infringed Works and the CSMC Infringing Products, Plaintiff is arguably entitled to summary judgment on the issue of liability.[3]  Under these circumstances, Plaintiff's irreparable harm is a given.

Indeed, as noted in the Harris Affidavit, it is extremely difficult to calculate the damages that Harris has suffered as a result of CSMC's action with any degree of reasonable certainty. (Harris Aff., ¶ 38.)  For example, there is no way to determine the customers that Harris has lost to CSMC, and whether these are former customers of Harris who chose to make subsequent orders with CSMC, or prospective customers who chose to place orders with CSMC in lieu of Harris. There is likewise no way to determine with any reasonable degree of certainty the impairment to Harris's goodwill and reputation as a result of CSMC's actions.  However, what is clear based on the substantial similarity between the Infringed Works and the CSMC Infringing Products is that there is a high likelihood of possible market confusion.  In light of Plaintiff's likelihood of success on the merits, this alone is sufficient to establish the requisite irreparable harm.

Moreover, as stated, CSMC is selling CSMC Infringing Products that contain a copyright notice and a year of registration.  It does not appear that a registration has actually been obtained for these products and, in any event, any such registration is invalid in light of Harris' registrations. Under such circumstances, representing to the world that CSMC is selling products that are protected by a copyright belonging to someone other than Harris, while Harris is at the same time selling substantially similar (if not essentially identical) products has the effect of signaling that Harris' copyrights are not strong and/or can be ignored.  This is particularly problematic because

---

[3] Of course the Court has within its power to *sua sponte* grant Plaintiff summary judgment upon notice to CSMC should it decide that is proper.  *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (explaining that "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all her evidence").

Harris' entire business is tied to the creation, manufacture, and sale of his originally created collector-grade pins, pendants, tie tacks, and other decorative items.

For these reasons, Plaintiff has suffered (and will continue to suffer in the absence of an injunction) irreparable harm.

### C.    The Equities Tip in Favor of Granting the Preliminary Injunction.

With respect to the balance of hardships between parties, this factor necessarily favors a plaintiff who has shown both a likelihood of success on the merits and irreparable harm in the absence of an injunction.  Indeed, the defendant's hardship related to lost business resulting from an injunction preventing the defendant from selling infringing products is not a hardship at all.  *See Mint, Inc. v. Iddi Amad*, 10-cv-9395, 2011 U.S. Dist. LEXIS 49813, *3 (S.D.N.Y. May 9, 2011) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.") (internal quotation marks and citations omitted).

Here, it is clear that the equities favor granting the preliminary injunction requested by Plaintiff.  Defendant is profiting unjustly from its sale of designs created by Plaintiff.  Moreover, based on a review of Defendant's website, which reveals the company's product offerings,[4] it is clear that Defendant's sale of the CSMC Infringing Products constitutes a relatively minor revenue source for Defendants.   In other words, to the extent Defendant's livelihood is a relevant consideration when balanced against the future livelihood of Plaintiff, stopping Defendant from continuing to sell the CSMC Infringing Products pending a final resolution of this matter will almost certainly not severely impact its business.  *See, e.g.*, *CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 146 (E.D.N.Y. 2011) (holding that the equities tipped in plaintiff's

---

[4] http://www.connecticutshotgun.com/galazan-products/

favor when, among other things, "[d]efendants' business will not be severely impacted, as they have an extensive array of non-infringing products that they may continue selling"). Conversely, allowing Defendant to continue selling the CSMC Infringing Products will significantly impact Plaintiff's business and reputation, which is derived entirely from the creation, manufacture, and sale of his originally created collector-grade artwork.

For these reasons, the equities and hardships tip in favor of granting the preliminary injunction.

**D.    The Public Interest Will Not Be Disserved by Issuance of the Injunction.**

As stated, the district court must also consider the public interest in deciding whether to issue a preliminary injunction. "[T]he public interest factor favors whichever party has shown a likelihood of success on the merits." *Lego A/S*, 874 F. Supp. 2d at 106; *see CJ Prods. LLC*, 809 F. Supp. 2d at 146 (holding that because the plaintiff was likely to prevail on the merits, the public interest favored the plaintiff's position). Moreover, in the context of copyright infringement, "there exists a strong policy in favor of defending copyrights." *CJ Prods. LLC*, 809 F. Supp. 2d at 146, 149 (stating also that "the public interest is served by preventing customer confusion or deception."); *DISH Network L.L.C. v. DelVecchio*, 831 F. Supp. 2d 595, 601 (W.D.N.Y. Oct. 7, 2011) ("The public interest is not disserved by an injunction as it will protect copyrights and help enforce federal law."); *Country Fare LLC v. Lucerne Farms*, 11-cv-0722, 2011 U.S. Dist. LEXIS 61064, at *29 (D. Conn. June 7, 2011) ("[T]he Court sees no reason why the public interest is disserved by the issuing of the preliminary injunction, and to the contrary finds that the public interest is served by such an injunction against the assertion of what at this preliminary state clearly and convincingly appears to be wrongful and fraudulent claims to a right to a trademark.").

Plaintiff has unequivocally demonstrated that he is the owner of valid copyrights in thirty-four designs that were unlawfully copied by Defendant in at least sixty of Defendant's products.  Based on Plaintiff's likelihood of success on the merits, there exists a strong public interest in defending Plaintiff's copyrights.

For these reasons, this factor also supports the issuance of a preliminary injunction.

### **CONCLUSION**

In light of the foregoing, Plaintiff respectfully requests that this Court grant Plaintiff's motion for a preliminary injunction or, in the alternative, set this matter down for a hearing on the preliminary injunction, ordering that any discovery occur on an expedited basis, together with such other and further relief as this Court may deem just, proper, and equitable.

Date:  April 8, 2016                           **SPEARS MANNING, LLC**


                                               By: /s/ Brian E. Spears
                                               Brian E. Spears (ct14240)
                                               Office and Post Office Address
                                               2425 Post Road, Suite 203
                                               Southport, CT  06890
                                               Telephone:   (203) 292-9766
                                               Facsimile:    (203) 292-9682
                                               bspears@spearsmanning.com

                                                       - and -

                                               **BARCLAY DAMON LLP**
                                               Michael A. Oropallo
                                               Jason C. Halpin
                                               Office and Post Office Address
                                               One Park Place
                                               300 South State Street
                                               Syracuse, New York 13202
                                               Telephone:   (315) 425-2831
                                               Facsimile:    (315) 703-7367
                                               moropallo@barclaydamon.com

                                               Attorneys for George G. Harris, a/k/a,
                                               George G. Harris' Wildlife Collection

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent  by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone  unable to accept electronic filing.  Undersigned will further arrange for delivery to defendant's place of business and serve copy of the foregoing along with the Complaint dated April 7, 2016.  Parties may access this filing through the Court's CM/ECF  system.

_____/s/ Brian E. Spears_____
Brian E. Spears